IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-40-FL

| | | |
|---|---|---|
| RUDOLPH WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rudolph Williams ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-14] be granted, Defendant's Motion for Judgment on the Pleadings [DE-17] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, DIB, and SSI on July 19, 2011 (Tr. 88-89, 118-19), alleging disability beginning August 30, 2009 (Tr. 198, 202). The

application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 88-89, 118-19, 154.) On October 3, 2012, a hearing was held before Administrative Law Judge Robert Phares ("ALJ"), who issued an unfavorable ruling on October 30, 2012. (Tr. 20, 24.) On January 7, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process.   The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy.   *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).   The burden of proof and production during the first four steps of the inquiry rests on the claimant.   *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).   At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform.   *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c).   This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.   *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3).   The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique."   *Id*. §§ 404.1520a(e)(3), 416.920a(e)(3).

## III.    ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act.   At step one, the ALJ found Plaintiff had not

engaged in substantial gainful employment since August 30, 2009. (Tr. 14.) Next, the ALJ determined Plaintiff had the following severe impairments: "major depressive disorder, recurrent; coronary artery disease; hypertension; history of alcohol dependency; and borderline intellectual functioning." (*Id.*) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-15.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform work activity except as follows:

> He can lift and carry 50 pounds occasionally and 25 pounds frequently. He can sit, stand, and walk each six hours in an eight-hour workday. Push/pull is limited to the above lift/carry restrictions. He is limited to simple, routine and repetitive tasks, with only occasional contact with co-workers and the general public.

(Tr. 16.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not fully credible. (Tr. 16-17.) At step four, the ALJ concluded Plaintiff was capable of performing the requirements of his past relevant work as a warehouse stocker "as actually and generally performed." (Tr. 18.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on two grounds. Plaintiff first contends that the ALJ erred at step three by dismissing Plaintiff's IQ scores as invalid and determining that Plaintiff's impairments did not meet or medically equal Listings 12.05B or 12.05C. Second, Plaintiff asserts that the Commissioner erred in failing to explain her consideration of or attribute weight to the decision of the North Carolina Department of Health and Human Services which determined Plaintiff's impairments meet Listing 12.05B.

4

## A. Listings 12.05B and 12.05C

Plaintiff contends that the ALJ erred in his step-three evaluation by dismissing Plaintiff's IQ scores as invalid. The ALJ explained his reasoning as to why Plaintiff did not meet Listing 12.05B or 12.05C stating Plaintiff did not have a valid IQ score below 60 or within the range of 60 to 70. (Tr. 15-17.) The ALJ additionally noted,

> Mr. Radson, [the examining consultant], stated that these scores were an under-estimate because it appeared that the claimant did less than his best on testing. On that same note, it appears, from the record evidence, that his cognitive issues are not that severe. This is supported by the fact that he has excellent work history that includes semi-skilled work, and he had no significant problems completing the same from a mental standpoint. Further, interestingly, in a Department of Health and Human Services Social History Summary for the Disabled Form dated September 13, 2011, the claimant never mentioned anything about a substantial intellectual impairment.

(Tr. 16.)

The burden of proof at step three is on the claimant to show that he meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. § 404.1525(e)(5). To establish medical equivalence, a claimant must "present medical findings equal in severity to all the criteria" for that listing. *Zebley*, 493 U.S. at 531. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3 (Jul. 2, 1996). In determining whether a listing is met or equaled, the ALJ must "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding." 20 C.F.R. §§ 404.1526(c), 416.926(c).

In order to meet Listing 12.05B, a plaintiff must satisfy two requirements. 20 C.F.R. § 404, Subpt. P, App. 1, 12.05B. First, a plaintiff must meet the introductory diagnostic description for intellectual disability. 20 C.F.R. § 404, Subpt. P, App. 1, 12.05. Specifically, a plaintiff must show a "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. § 404, Subpt. P, App. 1, 12.05. Second, the plaintiff must demonstrate "[a] valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. § 404, Subpt. P, App. 1, 12.05B.

To meet Listing 12.05C, a plaintiff must meet three requirements. 20 C.F.R. § 404, Subpt. P, App. 1, 12.05C. First, he must satisfy the same introductory diagnostic description for intellectual disability. 20 C.F.R. § 404, Subpt. P, App. 1, 12.05. Second, he must demonstrate "[a] valid verbal, performance, or full scale IQ score of 60 through 70," and third, he must have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. § 404, Subpt. P, App. 1, 12.05C.

Here, Plaintiff has two full-scale IQ scores from tests performed on April 6, 1995 and October 6, 2011. Both tests were administered by the consultative examiner Mr. Radson, whose opinions were given great weight by the ALJ.[1] In the evaluation administered on April 6, 1995, Mr. Radson administered the Wechsler Adult Intelligence Scale – Revised. Plaintiff received "a Verbal IQ of 55 (Below 1st percentile), a Performance IQ of 57 (Below 1st percentile), and a Full-Scale IQ of 51 (Below 1st percentile)." (Tr. 290.) Mr. Radson noted that Plaintiff's sister had reported Plaintiff does not drive and that the Disability Determination Services form[2]

---

[1] Plaintiff did not have a treating physician that addressed his mental impairments.
[2] The undersigned does not know which form to which Mr. Radson is referring. It appears it is a form not included in the record.

indicated Plaintiff had very limited reading skills and dropped out of school in the tenth grade. (Tr. 288-89.) However, in reporting Plaintiff's IQ scores, Mr. Radson stated, "It should be noted that it appeared that [Plaintiff] did less than his best on this instrument, and the obtained IQ's may be an under-estimate of his true intellectual ability." (Tr. 290.) Mr. Radson further opined that Plaintiff "was able to understand and follow instructions. He was able to perform simple repetitive tasks. He may have difficulty relating to others, given the aforementioned information. He may have difficulty tolerating the stress and pressures associated with daily work activity, given the aforementioned information." (Tr. 91.)

In the evaluation administered on October 6, 2011, Mr. Radson administered the Wechsler Adult Intelligence Scale – Fourth Edition. Plaintiff received "a Verbal Comprehension score of 51 (below 1st percentile), a Perceptual Reasoning Index Score of 51 (below 1st percentile), a Working Memory Index Score of 50 (below 1st Percentile), a Processing Speed Index Score of 50 (below 1st Percentile, and a Full Scale IQ of 42 (below 1st percentile)." (Tr. 303.) Mr Radson also reported that Plaintiff did not have a driver's license, had difficulty understanding the examiner's questions and instructions, had repeated the second and third grades according to Plaintiff and had a Global Assessment of Functioning of 55. (Tr. 301-04.) Mr. Radson noted Plaintiff tested within the lower limits of the moderate range of mental retardation but explained that the results underestimate Plaintiff's intellectual abilities because Plaintiff "gave up easily as some tasks became more difficult and his general effort was questioned." (Tr. 304.) In his diagnostic impression, Dr. Radson noted that cognitive disorder, not otherwise specified, and mild mental retardation needed to be ruled out. (*Id.*) Notwithstanding the questions he had concerning Plaintiff's efforts, Mr. Radson opined that Plaintiff "had difficulty understanding and following instructions. He had difficulty performing simple repetitive tasks. He would have

difficulty relating to others in a typical work setting given the aforementioned information. He would have difficulty tolerating the stress and pressures associated with a typical work day given the aforementioned information." *(Id.)* Lastly, Mr. Radson noted that Plaintiff would need assistance with personal, social and occupational competence, as well as assistance managing his funds. *(Id.)*

Though the ALJ purportedly gave Mr. Radson's opinions great weight, he determined that Plaintiff had borderline intellectual functioning, dismissing the 1995 and 2011 IQ scores as invalid due to Plaintiff "giving less than his best" and giving up easily as some tasks become harder. (Tr. 16-17.) However, Mr. Radson did not opine that Plaintiff had an IQ at or above 70, the low end of the borderline intellectual functioning range. Rather, he stated that mild mental retardation[3] needed to be ruled out, thus suggesting that Plaintiff functions somewhere between "the *lower* limits of the moderate range of mental retardation" and the mild range of mental retardation. (Tr. 304.)

Further, there is ample evidence in the record indicating that Plaintiff experienced subaverage general intellectual functioning with deficits in adaptive functioning before the age of twenty-two. Plaintiff reported that he repeated the second and third grades (Tr. 302) and that he dropped out of high school in the tenth grade because he could not read and kept "flunking" (Tr. 227, 289). School records indicate his learning capabilities were compromised. Throughout the records are indications that Plaintiff was a special needs student. His first grade teacher indicated he made "very little progress" and "needs special help." (Tr. 227.) In second grade, it was reported that Plaintiff is "very slow" but "seems to try very hard." *(Id.)* His third grade teacher said he was "behind in his reading" and "needs special help" *(Id.)* In fourth grade he is

_____

[3] Mild mental retardation is evidenced by an IQ of less than 70 and thus relates to Listing 12.05C.

described as "slow in most of his work," while in sixth it is noted that he is two grades behind. (*Id.*) In seventh he is noted to be a "slow learner" and "working below grade level." (*Id.*) In ninth grade his teacher stated he "works slow" and needs "individual specialized work." (*Id.*) Additionally, Plaintiff's school records indicate subpar achievement test results and an IQ of 63 (Tr. 226), as well a score of 66 on the Otis-Lennon School Ability Test at the age of nine (Tr. 230). The ALJ made no mention of these scores.

The ALJ in this case failed to give proper weight to the various IQ test results. Mr. Radson did not indicate that the 1995 and 2011 scores were invalid, nor did he suggest that Plaintiff's actual IQ was at or above 70. Thus, the ALJ's decision to disregard all evidence of standardized intelligence testing in favor of his own lay opinion of Plaintiff's intellectual impairments was error. "An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion." *Larson v. Astrue*, 615 F.23d 744, 749 (7th Cir. 2010). Nor may he "play doctor" by using his own lay opinions to fill evidentiary gaps in the record. *Chase v. Astrue*, 458 Fed. App'x 553, 557 (7th Cir. 2012); *see also* Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Court* § 6:24 (2013 ed.). Moreover, the ALJ's determination that Plaintiff's IQ falls outside the limits of Listings 12.05B and 12.05C is not supported by substantial evidence. Accordingly, this action should be remanded to the Commissioner for further consideration.

**B.    NCDHHS Medicaid Decision**

Plaintiff next claims that the Commissioner erred in her consideration of the North Carolina Department of Health and Human Services' ("NCDHHS") decision awarding Plaintiff Medicaid benefits. Following the ALJ's decision, NCDHHS issued a decision on March 18, 2013, finding that Plaintiff met the mental retardation criteria under Listing 12.05B. Plaintiff

submitted the NCDHHS decision on appeal and the Appeals Council admitted it into evidence.

Nevertheless, the Appeals Council denied review, stating:

> [W]e considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. The additional evidence considered by the Appeals Council includes the Notice of Decision, North Carolina Department of Health and Human Services (Dated: March 18, 2013; 3 pages).
>
> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 1-2.)

While the Appeals Council admitted the NCDHHS decison into evidence, the ALJ did not have the benefit of this material information at the time of his decision and the Appeals Council made no findings with regard to this newly admitted evidence in its order denying review. Because this evidence was made a part of the record and considered by the Appeals Council prior to its denial of review, the court must include this evidence in its review of the record as a whole. *Thomas v. Comm'r Soc. Sec.*, 24 Fed. App'x 158, 162 (4th Cir. 2001); *Sanders v. Colvin*, No. 5:11-CV-773-D, 2013 WL 3777198, at *4 (E.D.N.C. July 18, 2013) ("Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, 'the court must review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings.'" (quoting *Felts v. Astrue*, No. 1:11CV54, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012)) (first alteration in original) (internal quotation marks omitted)).

Given the materiality of the NCDHHS decision, the undersigned finds that remand is necessary. The undersigned expresses no opinion regarding the weight to be accorded to the decision. Absent further explanation of the Commissioner's findings, however, the court is

unable to determine whether Plaintiff's intellectual impairments were given due consideration at the applicable steps of the sequential analysis. Consequently, the court is precluded from determining whether the Commissioner's decision is supported by substantial evidence in the record and based on the proper legal standards.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-14] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-17] be DENIED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Memorandum and Recommendation..

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 15th day of December 2014.

KIMBERLY A. SWANK
United States Magistrate Judge